The document below is hereby signed.

Signed: September 26, 2017



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ROBERTO FELICE DONNA, | ) | Case No. 16-00091 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JESUS VENTURA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary Proceeding No. |
| ROBERTO FELICE DONNA, | ) | 16-10026 |
| | ) | |
| Defendant. | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION AND ORDER GRANTING
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

The defendant has filed a motion for summary judgment (Dkt. No. 34). In this case, the plaintiffs, former employees of the debtor, are suing to have their judgment in the District Court declared nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). I will grant the motion for summary judgment as the plaintiffs have not provided evidence to support their claims that the debtor intended to defraud, or knew any statements he

made to the plaintiffs were false, or that the debtor caused a
willful and malicious injury to the plaintiffs.

I

Facts

The relevant facts as presented by the parties are as
follows.  The debtor was a renowned chef in the District of
Columbia since 1984 with such awards as the James Beard Award for
Best Chef in the Mid-Atlantic in 1994 and Esquire's Chef of the
Year in 2012.  The debtor opened and operated the restaurant
Galileo in 1984.  In 2006, the building that Galileo was located
in underwent extensive renovation.  The landlord of that building
offered the debtor space in another building it owned in the
Crystal City neighborhood of Arlington, Virginia.  The debtor
closed Galileo and opened a new restaurant Bebo Trattoria
("Bebo") in Crystal City under the operation of a new entity RD
Trattoria, Inc.

The debtor contends that during this time the debtor focused
on the cuisine of Bebo and delegated financial matters to
managers.  Additionally, the debtor's financial manager at
Galileo left and the debtor hired new people to cover the
financial management of Bebo.  These managers oversaw accounts
and determined what payments to make and when to make them.  They
also issued the checks with a stamp for the debtor's signatures.
The plaintiffs dispute these facts insofar as the facts suggest

2

that the debtor was not personally involved and aware of the financial dealings of the company.  Plaintiffs contend that the debtor directed Ricardo Bonino and Corrado Bonino, two of the men who managed finances during this time, and the debtor approved the issuance of checks.

The plaintiffs are former employees of the debtor at Bebo. The plaintiffs were hired under the "tip credit system."  Under the Federal Labor Standards Act ("Federal Wage Law"), employers are required to pay their employees minimum wage.  The Federal Wage Law however allows employers to claim a "tip credit" which modifies the minimum wage and overtime requirements for tipped employees.  Employers may pay employees that earn tips less than the minimum wage, but must ensure that their employees' regular pay combined with tips equals the Federal minimum wage.  If an employee does not earn enough tips to meet the minimum wage in combination with their regular pay, the employer must make up the difference.  The plaintiffs understood that they were paid under the "tip credit" system.  The plaintiffs were allowed to keep their tips collected in cash, but tips paid by credit card were supposed to be distributed at the end of a shift.  Often, however, there was not enough cash to pay out credit card tips at the end of each shift.  Bebo's managers kept spreadsheets to track the accrued credit card tips owed to each employee and subsequent payments against those accrued amounts distributed to

the employees.   The plaintiffs dispute that these spreadsheets were accurate.

The debtor contends that Bebo was not as successful as Galileo and began to suffer from financial difficulty.   As a result, the debtor stopped taking a salary from Bebo, and his wife, who also worked for Bebo, stopped getting paid for her work.   They relied on the debtor's cooking class for income. Additionally, the debtor took out a loan, using his house located in McLean, Virginia, as collateral, to pay for Bebo's debts.

Additionally, the debtor did not pay the plaintiffs all their wages, and often the plaintiffs would receive unsigned checks, checks that were postdated, or checks that would bounce. The plaintiffs stopped cashing their checks with their own banks to avoid fees associated with bounced check.   When plaintiffs would ask the debtor to pay them, he would tell them that the company was having financial difficulty, but it was his intent to pay them in full.   Additionally, when employees threatened to leave, the debtor would ask them to stay promising to pay them when the restaurant had the money.

Bebo never recovered and was closed when it lost its lease in 2009.   The debtor argues that many of Bebo's business records were lost when the landlord seized the premises.   The plaintiffs, however, dispute this and say that some of the records were retained by other employees, including the bookkeeper Philip

4

Proulx.

The debtor was in financial difficulty at the time Bebo closed.  The debtor lost his home in McLean, Virginia, and an apartment he had in the Dupont Community of D.C. so that he and his wife were living in the basement of his in-laws.  His car was repossessed and his cashed-out life insurance and savings were drained.

The plaintiffs brought suit in the District Court against Bebo Foods, Inc., RD Trattoria, Inc., and the debtor for violating the Federal Wage law and the D.C. Wage Payment and Collection Law ("D.C. Wage Law").  After discovery, the court granted the debtor's counsels' motion to withdraw from the case because the debtor was unable to pay them.  This meant that the corporate entities defaulted because they were required to be represented by counsel.  The District Court further held that the debtor was an employer under the Federal and D.C. wage laws and personally liable to the plaintiffs because the debtor had operational control of the business.  The District Court further found that the debtor violated the Federal and D.C. wage laws by not paying his employees their regular pay, tips, and overtime. The District Court awarded a total of $526,893.16 to the plaintiffs.  The debtor's wages were garnished and he says a total of $80,095.49 was garnished before he declared bankruptcy. The plaintiffs contend that only a total of $75,570.36 was

5

garnished.

The debtor filed the petition commencing his bankruptcy case on March 2, 2016.  The plaintiffs brought this adversary proceeding on May 31, 2016.

## II

## Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When reviewing disputes of fact, the court looks at the facts in the light most favorable to the nonmoving party, looking at all reasonable inferences.  *Id.* at 255.  However, it is insufficient for the nonmoving party to show some factual dispute.  *Id.* at 247.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

## III

## Nondischargeability Under Section 523(a)(2)(A)

The plaintiffs seek relief under 11 U.S.C. 523(a)(2)(A) which, in relevant part, provides that a debtor's discharge under 11 U.S.C. § 727 does not discharge the debtor from any debt for

6

money or property or any extension of credit to the extent it is
obtained by "false pretenses, a false representation, or actual
fraud, other than a statement respecting the debtor's or an
insider's financial condition."  For the plaintiffs to prove a
right to nondischargeability under § 523(a)(2)(A), based on false
pretenses or false representation, they must show by the
preponderance of the evidence:

> (1) misrepresentation, fraudulent omission or deceptive
> conduct by the debtor; (2) knowledge of the falsity or
> deceptiveness of his statement or conduct; (3) an
> intent to deceive; (4) justifiable reliance by the
> creditor on the debtor's statement or conduct; and (5)
> damage to the creditor proximately caused by its
> reliance on the debtor's statement or conduct.

*Jones v. Holland (In re Holland)*, No. 12-10040, 2013 WL 2190164,
at *3 (Bankr. D.D.C. May 21, 2013) (quoting *Turtle Rock Meadows
Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir.
2000)).  The plaintiffs must show more than that a promise was
made and not kept:

> The mere breach of a promise is never enough in itself to
> establish the fraudulent intent.  It may, however, be
> inferred from the circumstances, such as the defendant's
> insolvency or other reason to know that he cannot pay, or
> his repudiation of the promise soon after it is made,
> with no intervening change in the situation, or his
> failure even to attempt any performance, or his continued
> assurances after it is clear that he will not do so.

*Osayande v. Momoh (In re Momoh)*, No. 14-10034, 2016 WL 270155, at
*1 (Bankr. D.D.C. Jan. 20, 2016) (quoting Prosser & Keaton on
Torts § 109 (5th ed. 1984)).  "An honest belief, no matter how
unreasonable, that the representation is true and that the

speaker has information to justify it is an insufficient basis for deceit." *Faria v. Silva (In re Silva)*, No. 1201274, 2014 WL 217889, at * 7 (Bankr. D. Mass. Jan. 21, 2014) (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997)). "Because the question of intent is inherently fact-based, it is an issue more appropriately resolved by the finder of fact." *Flakker v. Flakker (In re Flakker)*, No. 14-10037, 2015 WL 4624545, at *3 (Bankr. D.D.C. Aug. 3, 2015). However, here, the plaintiffs have failed to present evidence from which a reasonable finder of fact could find that the debtor intended to deceive them, and thus summary judgment is appropriate as to this issue. *See Anderson*, 477 U.S. at 248, 250.

The plaintiffs argue that the debtor promised to pay them, but did not. This alone is not enough to show false pretenses, a false representation, or actual fraud under § 523(a)(2)(A). The plaintiffs must show that the debtor intended to defraud, or knew that his representation that he would pay them was false. This is an issue of fact, generally reserved for the finder of fact. However, the evidence does not show the debtor had the intent to defraud or knowledge that his representations that he would pay the plaintiffs were false. The evidence does show that the defendant was undergoing economic difficulty due to a perfect storm of bad circumstances. The debtor lost a prime location, due to the building housing his restaurant, Galileo, undergoing

renovation, Bebo was not as successful as Galileo, and all the actions the debtor took to create financial stability for Bebo failed. The evidence shows that the debtor took out a loan to pay the financial needs of Bebo, laying his house down as collateral. He and his wife stopped taking a salary from Bebo. He also tried to keep his employees, so the restaurant could continue to provide service to the clientele it had. The plaintiffs argue that the restaurant was busy. If all the employees left, the service would have fallen, resulting in fewer diners frequenting the restaurant, and Bebo would have brought in even less than it did. If this had happened, there would have been no hope of Bebo ever succeeding. These actions are not actions of a man trying to defraud his employees, but are the actions of a man trying to rebuild his business so he and his employees could all benefit economically.

Plaintiffs contend that the restaurant was not doing as badly as the debtor claims. However, the only evidence the plaintiffs provide is that the restaurant appeared to be busy. These observations are speculative at best. The plaintiffs do not provide any further evidence to suggest that the business was making money. Often, businesses look busy and productive on the outside, but are inwardly struggling, especially during financially difficult periods, such as the period between 2006 and 2009 when these events took place. There is plenty of

evidence to show that Bebo was struggling financially.  The
plaintiffs have not established a genuine dispute as to that
material fact.  The plaintiffs are required to prove by the
preponderance of the evidence that the debtor was deceiving them,
and they have not established that there is sufficient evidence
from which a finder of fact could permissibly find that the
restaurant was not doing as poorly as pictured and that there was
enough money to pay the plaintiffs their wages, overtime, and
tips.

There is no evidence from which a reasonable finder of fact
could find that the debtor knew that Bebo was a doomed project
and there was no hope of recovery, meaning he would never have
the means to pay his employees, and that any representation that
he would pay them was knowingly false and made with an intent to
deceive.  Hindsight is always clearer.  Perhaps the debtor would
have been better off closing Bebo earlier and cutting his losses.
In that case, plaintiffs would still have gotten very little if
anything.  Further, the debtor was a renowned chef, and had been
very successful.  He justifiably believed he could succeed and
make a profit out of Bebo.  The plaintiffs all admitted that they
trusted he could succeed because of his reputation.
Additionally, the debtor would never have used his house as
collateral on a loan for a project he knew was doomed to fail.
The debtor and the plaintiffs reasonably believed that the debtor

would pay the plaintiffs as he promised he would.  The plaintiffs
have not provided any evidence to show that the debtor knew his
representation that he would pay them was false.

The plaintiffs further contend that the debtor issued checks
that were for nothing, postdated, or unsigned, and that there
were insufficient funds in the accounts to pay on the checks.
The plaintiffs, however, fail to provide evidence that the debtor
himself issued any problematic checks.  All the actions the
plaintiffs bring forth are actions of the company, Bebo, and the
individuals handling the issuance of checks, not of the debtor.
The plaintiffs' evidence shows that they obtained pay stubs,
checks, and printouts of the spreadsheet Bebo kept, from Ricardo
and Corrado Bonino, not the debtor.  The debtor has provided
evidence that he delegated the finances of the company to
managers.  While he, as the owner, had ultimate approval
authority over payments to employees, there was no evidence
provided by the plaintiffs that the debtor took any specific
actions of wrongful conduct against the plaintiffs.  In fact, the
only interaction the plaintiffs allege they had with the debtor
is that on any occasion when employees complained to the debtor
about the delay in payment or difficulty cashing certain checks,
the debtor acknowledged that Bebo had cash flow difficulties,
that Bebo needed to pay the operating expenses of the restaurant,
and that it was his intention that they receive their payments

11

when funds became available

Moreover, even if the debtor issued problematic checks, this becomes an issue of law for this court to decide whether a check is a false pretense, false representation, or actual fraud.  Some courts have adopted the reasoning of the Supreme Court case, *Williams v. U.S.*, 458 U.S. 279, 284 (1982), which held that "technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.'" *Goldberg Securities, Inc. v. Scarlata (Matter of Scarlata)*, 979 F.2d 521 (7th Cir. 1992) (the court determined that *Williams* was appropriate to follow before noting that the check was not faulty because it did not bounce); *Rowaid v. Apedoh (In re Apedoh)*, *No. 09-00120, 2011 WL 2357346, at *13-*14 (Bankr. N.D. Ala. March 28, 2011)*; *Mandalay Resort Group v. Miller (In re Miller)*, 310 B.R. 185 (Bankr. C.D. Cal. 2004); *Ray E. Friedman and Co. v. Jenkins (In re Jenkins)*, 61 B.R. 30, 39-40 (D. N.D. 1986).  Other courts have refused to extend *Williams* to bankruptcy because the court in *Williams* was interpreting a criminal statute and not the Bankruptcy Code.  *CJH Capital Corp. v. Dino Yavuncu (In re Dino Yavuncu)*, No. 03-9293, at *2 (Bankr. N.D. Georgia March 29, 2005); *Q.C. Financial Services v. Beza (In re Beza)*, 310 B.R. 432, 436 (Bankr. W.D. Mo. 2004); *Check Control, Inc. v. Anderson (In re Anderson)*, 181 B.R. 943 (Bankr. D. Minn. 1995); *Meramec Valley Bank v. Newell (In re Newell)*, 164 B.R. 992, 995 (Bankr.

12

E.D. Mo. 1994) (declining to apply *Williams* because it derived
from a criminal proceeding not a civil proceeding).   The court
agrees with the courts that have adopted *Williams* in bankruptcy.
While it is true that *Williams* was decided in a criminal case,
the principle is the same.  A check, in and of itself, is not a
false representation of fact, because it is not a representation
of fact.  If anything, the check is a further acknowledgment of
the debt.  As *Williams* made clear, the purpose of a check is to
give the bearer of the check the right to draw a certain sum of
money from a bank.  If the check is not honored by the bank, the
drawer promises to pay the amount not honored.  The court holds
that without more, the checks issued by the debtor are
insufficient to show false pretenses, false representation, or
actual fraud.

The plaintiffs became aware that checks were being issued
that were not being honored when presented for payment.  In that
circumstance, it would not be reasonable to find that they were
deceived when they continued to work and the debtor failed to
make payment in good funds for the further services they
provided.  As previously noted, on any occasion when employees
complained to the debtor about the delay in payment or difficulty
cashing certain checks, the debtor acknowledged that Bebo had
cash flow difficulties, that Bebo needed to pay the operating
expenses of the restaurant, and that it was his intention that

13

they receive their payments when funds became available.  Even
when the debtor stated a specific date by which payment would be
made (like in a week), the context obviously was that Bebo was
unable currently to make the payment but it was expected it would
have sufficient funds by the specified date to make the payment.
Making a statement to that effect is not a case of making a
statement with an intent to deceive.  There has been no evidence
submitted to show that when such a statement was made, the debtor
knew that he intended not to make the payment.

The plaintiffs also argue that the debtor promised to pay
the plaintiffs the legal minimum wage and overtime, but the
plaintiffs fail to show an instance where the debtor specifically
promised to pay any of the plaintiffs minimum wage and overtime.[1]
Most of the defendants did not interview with nor were hired
directly by the debtor.[2]  They also do not provide the time,
location, or the statements the debtor made promising to pay the

---

[1]  It is true that evidence shows that the debtor promised
to pay Jesus Ventura $8 an hour, which is more than the minimum
wage.  However, unlike the other employees making the claim that
they were told they would be paid minimum wage and overtime, but
were actually being paid less under the "tips credit" minimum
wage, Ventura does not argue that he was being paid less than
minimum wage.  He may have been in fact paid less than his
promised wages, but that goes back to the previous flawed
contention that the debtor promised to pay him, but didn't, which
the court has rejected as insufficient to establish deceit.

[2]  The only plaintiff interviewed and hired directly by the
debtor was Arturo Ramos.  However, no evidence was provided to
indicate whether the debtor promised to pay Ramos the legal
minimum wage or with the tip credit, nor was any evidence
provided to show that the debtor misrepresented Ramos' wages.

14

plaintiffs minimum wage and overtime.  Further, the plaintiffs
all admit in their depositions that they clearly knew that they
were being paid the minimum wage for tipped employees.  Even if
they were promised a higher wage, the failure to pay the higher
wage is a breach of contract, but it does not establish an intent
to deceive.

There is simply no evidence which would permit a reasonable
finder of fact to find "false pretenses, a false representation,
or actual fraud."  Therefore, the debtor's motion for summary
judgment should be granted as to claims under § 523(a)(2)(A).

IV

Nondischargeability under Section 523(a)(6)

The plaintiffs also seek relief under 11 U.S.C. § 523(a)(6),
which excepts from a chapter 7 discharge any debt that is "for
willful and malicious injury by the debtor to another entity or
to the property of another entity."  Willful and malicious are
distinct elements that must be proven separately.  *Econ. Dev.
Growth Enters. Corp. v. McDermott (In re McDermott)*, 434 B.R.
271, 282 (Bankr. N.D.N.Y. 2010).  Accordingly, I will address
each element separately.

A. Willfulness

Under § 523(a)(6), "[t]he word 'willful' ... modifies the
word 'injury,' indicating that nondischargeability takes a
deliberate or intentional injury, not merely a deliberate or

15

intentional act that leads to injury." *Kawaauhau v. Geiger*, 523
U.S. 57, 61–62 (1998) (emphasis in original).  To prove
willfulness, "[t]he plaintiff must show either that the defendant
intended to cause the injury itself or that the defendant acted
intentionally and the act in question was certain or
substantially certain to result in the injury."  *Pah Co. v.
Eliopoulos (In re Eliopoulos)*, No. 11-02657, 2013 WL 3941380, at
*3 (Bankr. S.D. Fla. July 29, 2013).

The plaintiffs rely on *Oliveira v. Ruhland (In re Ruhland)*,
where the court found a debt owed by the employer to an employee
was nondischargeable under § 523(a)(6).  No. 11-1322, 2013 WL
1088737, at *13 (Bankr. D. Mass. Mar. 13, 2013).  In *Ruhland*, the
facts showed that the debtor, the owner of a painting business,
had a history of not paying his employees their wages to the
point that he was investigated and found to have violated
Massachusetts wage laws by the Attorney General.  2013 WL
1088737, at *3.  The debtor and the Attorney General entered into
an agreement whereby the debtor agreed, among other things, to
prospectively pay employees within a week of the pay period,
provide pay stubs, and pay overtime.  *Id.* at *4.  Further, the
facts showed that the debtor did not have any creditors at the
time he hired the plaintiff, hired undocumented immigrants,
including the plaintiff, used the money paid by customers for
personal expenses, and gave money to his wife before paying his

16

employees.  *Id.* at *12.  The court held that these facts
indicated a plan to evade the agreement with the Attorney General
and Massachusetts wage laws.  *Id.* at *11-*12.  It reasoned that
the debtor hired undocumented immigrants who would not report him
to the authorities so he could steal their labor and use their
earnings for his own personal use.  *Id.*  This indicated that the
debtor acted willfully.  *Id.*

Similarly, the court found willfulness in *Petralia v.
Jercich (In re Jercich)*, 238 F.3d 1202 (9th Cir. 2001).  In
*Jercich*, Jercich, the employer, failed to pay Petralia his
commissions as required under the employment agreement.  238 F.3d
at 1204.  Petralia quit and brought an action in California state
court to obtain his unpaid wages.  *Id.*  The state court granted
judgment in the plaintiffs' favor finding that "Jercich had the
clear ability to make these payments to Petralia, but chose not
to" and instead "utilized the funds from his company to pay for a
wide variety of personal investments, including a horse ranch."
*Id.*  The Ninth Circuit Court of Appeals found that this showed
that Jercich had acted willfully.  *Id.* at 1208-1209.

The debtor relies on *Orr v. Marcella (In re Marcella)*, where
the debtor failed to give the plaintiff her check for the work
she performed as a salaried employee because he did not have the
money to cover the check.  463 B.R. 212, 216 (Bankr, D. Conn.
2011).  The court found that the debtor had not caused a willful

17

injury because there was a gradual decline of business revenue in
the business ledger, numerous checks were returned for
insufficient funds, the company was unable to pay all its
creditors, and the employer did not divert funds to personal use.
*Id.* at 220.

The court must determine whether the debtor intended to
cause the plaintiffs' injury. The plaintiffs contend that the
District Court has already determined that the debtor acted
willfully. However, the plaintiffs fail to comprehend the
distinction between the debtor's willful failure to pay wages and
the debtor's causing a willful injury. The Supreme Court has
made clear that the term "willful" modifies "injury," and the
plaintiffs must prove that the debtor willfully injured them, not
that he took some willful act that injured them. The District
Court found that the debtor willfully violated his obligations
under the Federal and D.C. wage laws, in other words, the debtor
took a willful act to not pay the plaintiffs. While that willful
act necessarily caused the plaintiffs' injury, this alone is not
proof that the debtor caused a willful injury. Therefore, the
District Court's ruling is inapposite to this case.

The plaintiffs further do not provide any proof that the
debtor intended to injure the plaintiffs. All the facts
indicated that the debtor wanted to pay the plaintiffs, but could
not. There is no indication that he wanted the plaintiffs to be

harmed.

But for the debtor's inability to pay the employees and meet
as well other expenses of the restaurant, the plaintiffs might be
able to show that the debtor substantially knew that failure to
pay the plaintiffs their wages would cause them an economic
injury.  It would be very obvious that plaintiffs would need
their wages to buy food, pay rent, and other costs of living.
Also, the facts show that the plaintiff Arturo Ramos specifically
told the debtor that Ramos needed his money to pay his rent.
However, this is insufficient for a § 523(a)(6) analysis.  In
*Hall v. Burns (In re Burns)*,  the court recognized that "[a]t
first blush, it would appear that [failure to pay overtime]
constitutes a willful injury: Debtor must have known that the
failure to pay Plaintiff money rightfully owed would injure the
Plaintiff financially."  No. 11-70010, 2013 WL 752494, at *4
(Bankr. N.D. Ala. Feb. 27, 2013).  However, the court also
recognized that such a ruling "would mean that every debtor who
failed to pay a debt would be subject to a nondischargeability
action brought pursuant to § 523(a)(6)."  *Id.*  The court
determined that there was no "distinction between failing to pay
overtime wages and failing to pay any other justly owed debt" and
"in the absence of aggravating circumstances . . . failure to pay
a justly owed debt is not grounds for finding a willful injury."
*Id*.  The court agrees with the reasoning of *Burn*.  There is no

19

distinction between a violation of the Federal and D.C. wage laws
and failure to pay any other "justly owed debt."  Thus, without
aggravating circumstances, the debtor's failure to pay the
plaintiffs' wages is insufficient to find willfulness under
§ 523(a)(6).

The issue then becomes whether the plaintiffs have provided
evidence to indicate aggravating circumstances.  In *Ruhland*, the
court found that the debtor acted willfully because the facts
evidenced a scheme whereby the debtor was escaping a legal
obligation to pay wages by hiring undocumented immigrants who
would not turn him in.  Additionally, both *Ruhland* and *Jercich*
found willfulness because the debtor had the means to pay the
debtor, but put the money toward personal use.

This case is not like either *Ruhland* or *Jercich*.  The

plaintiffs do not show a widespread illegal payment scheme.[3]  The
facts do not indicate that the debtor intentionally evaded his
responsibility to pay the plaintiffs.  The debtor provided the
plaintiffs checks in payment of wages and tips; he just did not
have the money in the bank to honor those checks.  It is true
that the debtor paid business expenses before he paid the
plaintiffs, but this does not indicate an illegal payment scheme.
If the debtor had allowed the business to default on its debts,
and did not cover the business expenses, then no one would have
been paid because there would have been no business to make
money.[4]  There is no indication that the debtor was engaging in

---

[3]  The court found willful and malicious injury in *Alessi v.
Alessi (In re Alessi)*, where the debtor refused to pay a debt
held by her former spouse with funds earmarked for that debt.
405 B.R. 65, 68 (2009).  Plaintiffs may argue that the tips were
earmarked for the plaintiffs' wages and that the debtor had no
right to use such funds to pay business expenses.  In *Alessi*
there were clearly funds available to make the disbursement to
the debtor's former spouse, and the court treated the funds as
the equivalent of a property interest based on the earmarking of
those funds for the former spouse.  Here, in contrast, the
business was unable to meet all expense and there was no
statutory provision or express agreement requiring that the tips
would be segregated and held for the employees.  (Specifically,
28 U.S.C. § 230(m) is not such a provision.)  The employees were
well aware that the debtor's restaurant was struggling and that
the tips sometimes could not be paid and the restaurant kept
afloat.  When checks were issued to the employees, tips were paid
along with wages, and there were not sufficient funds to pay the
checks for all of the employees.

[4]  The Federal and D.C. wage laws do not make willful under
§ 523(a)(6) the same as willful under 26 U.S.C. § 6672 with
respect to a failure to pay trust fund taxes, for which an
election to pay other creditors before paying the trust fund tax
obligations is considered a willful act.  Here, the amounts owed
the employees were not trust fund obligations.

an illegal payment scheme.

The plaintiffs have also offered no evidence that the debtor used the plaintiffs' money for personal use.  The plaintiffs offer the debtor's plea of guilty to an embezzlement of tax money charge, with the inference that the debtor could have used the plaintiffs' wage and tips earnings for personal expenses. However, the plaintiffs do not provide any evidence that the debtor did in fact use wage or tips earnings on personal expenses.  The closest the plaintiffs come to this allegation is a testimony by Elizabeth Scott in the first hearing on damages in the District Court case, and in her deposition taken for the District Court case, indicating that the debtor took lavish trips, bought a new computer, had a nice car and an expensive home.  Yet, Scott's testimony is purely speculative, likely based on hearsay, and without a single shred of evidence of truth.  In fact, in her deposition, Scott said the debtor paid for the trips with a credit card and she could not recall whether he was ever reimbursed for those trips.

This case is more like *Marcella*.  The debtor's revenue was diminishing, checks were coming back for insufficient funds, the debtor struggled to pay creditors (in fact, he had to take out a loan with personal property as collateral to pay his business's creditors), and there is no evidence that the debtor diverted funds for personal use.  The plaintiffs try to distinguish

22

*Marcella* by saying that case involved the failure to pay an obligation, whereas here the debtor had a widespread illegal payment scheme.  As already discussed above, there is no evidence of a widespread illegal payment scheme.  The only real difference is that the debtor in this case gave the checks to the plaintiffs instead of holding the checks because of insufficient funds.

Therefore, the plaintiffs have not shown that the debtor caused a willful injury.

B. Maliciousness

An injury is malicious "if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will."  *Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur)*, 737 F.3d 814, 818 (1st Cir. 2013) (quoting *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir. 1997)); 4 Collier on Bankruptcy ¶ 523.12 (15th ed. 1996).  An action is considered "malicious" if its is taken in conscious disregard of one's duties without just cause or excuse."  *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (citations omitted).

The plaintiffs argued that the District Court found "no legally acceptable reason for Defendant to withhold the wages." *Opposition Motion for Summary Judgment* (Dkt. No. 36) at 8. However, just because the debtor did not have a legal reason to avoid paying the plaintiffs their wages under the Federal and D.C. wage laws, does not mean that the debtor acted "without just

23

cause or excuse" under § 523(a)(6).  D.C. law creates a cause of
action for employees who are not paid in accordance with the D.C.
Wage Law.  The statute, however, imposes liability without
consideration of whether there was just cause or excuse for the
failure to comply with the statute.  Although the debtor's good
faith in failing to pay the wages may be irrelevant for purposes
of liability under the D.C. statute, it may be relevant for
purposes of deciding whether the debtor acted maliciously.  When
a statute imposes absolute liability, a violation of that statute
does not necessarily establish that the conduct was without just
cause or excuse such as to have been malicious within the meaning
of section 523(a)(6).[5]

    In *Ruhland*, the court found that the debtor acted
maliciously because the debtor had sufficient funds to pay the
plaintiff, the debtor did not have any creditors and his home was
in the name of his wife who paid the mortgage, but still he did

---

[5]  As to the malice element of section 523(a)(6), some
courts require a finding of "some aggravating circumstance
evidencing conduct so reprehensible as to warrant denial of the
'fresh start' to which the 'honest but unfortunate' debtor would
normally be entitled under the Bankruptcy Code." *Liddell v.
Peckham (In re Peckham)*, 442 B.R. 62, 86–87 (Bankr. D. Mass.
2010).  In *Peckham*, for example, the court found that a sanction
for noncompliance with an order to respond to post-judgment
discovery was not excepted from discharge because the debtor was
depressed, broke, and "buried his head in the sand and presumably
hoped that the whole matter would go away," and thus lacked any
specific intent to harm the creditor.  *Id.* at 87.  Under the
*Peckham* view of the malice element, the debtor's conduct here was
plainly not malicious.

24

not pay his employee.  2013 WL 1088737, at * 13.  The court also
found the debtor acted maliciously in *Jercich* because the debtor
had the means to pay wages but refused to do so.  238 F.3d at
1207.  "*Jercich* involved an employer who not only failed to pay
his employee, but used business funds for personal investments,
including a horse ranch," and who "ruthlessly exploited the
corporation's assets and staff."  *In re Weinberg*, 410 B.R. 19,
36-37 (9th Cir. BAP 2009).

However, the court did not find malice in *Marcella* because
the debtor did not have the means to pay the plaintiff.  463 B.R.
at 222.  The court recognized that the debtor's conduct in
withholding a check from the plaintiff did not have a valid
defense under Connecticut law, but the conduct was insufficient
in bankruptcy to find malice under § 523(a)(6).

There is not a material dispute as to maliciousness.  The
plaintiffs improperly rely on the District Court's finding that
the debtor was an employer, and so all actions taken against the
plaintiffs were taken by the debtor.  However, the District Court
found that the debtor was an employer, because he had operational
control over the business and supervised the management of Bebo's
finances.  Additionally, the plaintiffs impute many of the
actions of the debtor's managers onto the debtor because he
supervised them.  However, the plaintiffs must show that the
actions of the malicious injury derive from the actions of the

25

debtor, not his subordinates.  Additionally, the intent of the debtor must be derived from his actions, and not the actions of others.  The actions of Bebo and its management cannot be imputed onto the debtor for the purpose of preventing a discharge under § 523(a)(6).  The plaintiffs must show that *the debtor* acted maliciously against the plaintiffs.

The plaintiffs argue that the *Ruhland* court found the debt as nondischargeable under § 523(a)(6) before it determined that the debtor could pay his employee.  However, the plaintiffs confuse the holdings in *Ruhland*.  While it is true that the court found wilfulness before it made the determination that the debtor could pay his employee, it did not find maliciousness until it determined that the debtor could pay his employee.  In the case before this court, the debtor did not have sufficient funds to pay the plaintiffs.  The evidence shows that Bebo and the debtor personally were under financial difficulty.  The facts show that the debtor obtained loans secured on his own property to pay restaurant debts, and he and his wife went without pay, in an attempt to help the restaurant become financially stable.

The plaintiffs have offered no admissible evidence to show that the debtor had the money to pay them, and chose to use that money on personal expenses or entertainment.  The plaintiffs argue that the business was doing well because it was always busy, implying that the business was making money and that the

26

debtor was not paying the plaintiffs.  Nonetheless, as I discussed in the previous section, there is simply no evidence to support these speculations.

The plaintiffs also do not offer any evidence to suggest that the debtor put the money toward personal use.  As already discussed in the previous subsection, the debtor's plea of guilty to an embezzlement of tax money charge and Scott's testimony do not provide any evidence that money was being diverted to personal use.

There are simply no facts on the record to indicate that the debtor acted maliciously.  In fact, the facts show the opposite. The debtor tried to retain the services of his employees to improve everyone's situation.  If the business could have endured long enough to start making money, everyone would have been better off.  Everyone, including the plaintiffs, believed that the debtor could pull it off.  Unfortunately, this was not realized, but that does not mean that the debtor failed to make payments when due with an intention to inflict injury, or that the failure to make payment as required was done maliciously.

Thus, the debtor's motion for summary judgment should be granted as to claims under § 523(a)(6).

V

For the afore stated reasons, it is

27

ORDERED that *Defendant's Motion for Summary Judgment* (Dkt. No. 34) is GRANTED.   It is further

ORDERED that a judgment follows dismissing this adversary proceeding with prejudice.

[Signed and dated above.]

Copies to: Recipients of e-notification.